# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KAY BEER DISTRIBUTING, INC.,

    Plaintiff,

v.                                        Case No. 07-C-1068

ENERGY BRANDS, INC.,

    Defendant.

## DECISION AND ORDER

As a result of the Court's decision partially granting the defendants' motion for summary judgment, the only claim remaining in this case is Plaintiff Kay Beer Distributing, Inc.'s, ("Kay Beer") claim for breach of an oral distribution agreement with Defendant Energy Brands. Kay Beer began distributing Energy Brands enhanced vitamin water drinks under an oral agreement in early 2002. The parties dispute whether they agreed to a contractual term governing the duration of the agreement. Kay Beer claims Energy Brands promised that Kay Beer would continue as its distributor so long as Kay Beer worked in good faith and continued to increase sales of Energy Brands' products; Energy Brands denies any such promise and contends the agreement was terminable at will. The parties also dispute the effect of a second written agreement entered into in 2005. Kay Beer claims it simply reduced the territory in which Kay Beer was allowed to distribute the product; Energy Brands contends the written agreement terminated the earlier oral agreement between the parties, and that Kay Beer thereafter operated as a sub-distributor of defendant Cadbury Schweppes Bottling Group, Inc. ("Cadbury"), who has since been dismissed.

The matter is now before the Court on Kay Beer's motion to compel discovery. More specifically, Kay Beer seeks access to five DVDs containing Energy Brand emails and other electronically stored information ("ESI") over the five years the parties did business together and beyond that contain the terms "Kay Beer," "Kay Distributing," or "Kay." Kay Beer claims it is entitled to this information in searchable and useable format with metadata included. Energy Brands opposes Kay Beer's motion on the ground that the DVDs contain privileged and other non-discoverable information and the costs of reviewing and producing the ESI Kay Beer seeks is unduly burdensome given the narrow issues remaining in the case.

I agree with Energy Brands that, given the issues remaining in the case, Kay Beer's discovery requests are over broad and seek information outside the scope of discovery. For that reason alone, Kay Beer's demand that the DVDs be produced should be denied. Moreover, to require Energy Brands to produce all of the documents containing some variation of Kay Beer's name that are electronically stored on the DVDs would place an unreasonable burden on Energy Brands because it would be required to incur the cost of having its attorneys review all of the information contained on the DVDs to determine what information is privileged, confidential, or otherwise beyond the scope of discovery. Kay Beer has made no showing justifying its request that Energy Brands incur such additional costs. For these reasons, Kay Beer's motion to compel production of the DVDs will be therefore denied. I also conclude, however, that Energy Brands had a duty to conduct a search of its ESI for discoverable information using variants of Kay Beer's name. If it has not already done so, it should complete its search and provide Kay Beer with any additional discovery it uncovers.

## DISCUSSION

Although the Rule 26(f) Joint Report and Discovery Plan from December 28, 2007 indicated that the parties "do not anticipate that electronic discovery will be a significant feature of this case," subsequent events have proven this optimistic prognostication wrong. (Doc. # 8 at 4.) Things started out on the wrong foot when Energy Brands erroneously stated that it did not have electronic data, including emails, concerning the claims asserted against it. In March 2008 counsel for the parties met and conferred on Kay Beer's request for email. (Weber Decl. in Supp. of Mot. to Compel, Exs. K-M; Doc. # 53-12, 53-13, 53-14.) In a letter of March 26, 2008, Brian W. McGrath, outside counsel for Energy Brands, represented that Energy Brands did not have electronic data that would include emails relating to Kay Beer. (*Id.* at Ex. M; Doc. # 53-14.) At a hearing before the Court on a motion for a protective order the following month, counsel for Energy Brands claimed that everything that in-house counsel for Energy Brands had been able to find in a corporate document search had already been produced to Kay Beer. (*Id.* at Ex. CC at 5; Doc. # 53-30.) On May 16, 2008, when asked to admit that it had in its possession or control stored electronic information relating to Kay Beer created on or before November 2, 2007, Energy Brands entered a denial. (*Id.* at Ex. I, Resp. to Admit 11; Doc. # 53-10 at 3.) Three days later, Energy Brands admitted that it did have email dating back to approximately June 2003.[1] (*Id.* at Ex. Q; Doc. # 53-18.)

---

[1] Kay Beer contends the misstatements about Energy Brands ESI were part of a deliberate effort to obstruct its efforts to obtain essential discovery. Pointing to the testimony of Energy Brands' IT representative that he supplied Energy Brands' in-house counsel with a copy of the DVD containing ESI referencing Kay Beer as early as January or February of 2007. (Doc. # 57, Br. Opp. Mot. to Compel at 10.) Energy Brands, however, contends that the IT representative was in error and offers the declaration of its in-house counsel in support of its claim that the DVD containing ESI relating to Kay Beer was not provided to him until May. (Doc. # 74, DiSalvo Decl. ¶ 6.)

Once counsel for Energy Brands in this action acknowledged that historic email existed, Energy Brands searched for and preserved emails relating to Kay Beer. The results of this search were placed on a DVD containing over 4 gigabytes of data consisting of approximately 17,919 documents. (McCauley Decl. ¶ 4; Doc. # 91-2.) At the request of its counsel, Energy Brands ran a more inclusive search of its emails which yielded an additional four DVDs of files containing over 13 gigabytes of data. (*Id*. at ¶¶ 5-6.) After a third-party vender was hired to eliminate the overlapping data from the initial search, there remained approximately 38,628 documents consisting of approximately 650,000 to 975,000 pages. (*Id.* at ¶ 7.) The emails on the five DVDs range from 2002 to 2008. (*Id*. at ¶ 9.) It is these DVDs that are at the center of the current dispute.

Kay Beer moved to compel the production of the five DVDs containing emails from Energy Brands related to its dealings with Kay Beer. (Doc. # 57.) In my earlier decision partially granting Energy Brands' motion for summary judgment, I denied Kay Beer's motion to stay consideration of the motion and compel production of the DVDs and other discovery Kay Beer sought on the ground that there was no reason to believe that the additional discovery sought by Kay Beer had any bearing on the legal theories on which Energy Brand sought summary judgment on the various claims asserted. I thereafter granted Energy Brands' motion in part dismissing all but one of Kay Beer's claims. Kay Beer contends that it is now in need of the additional discovery it sought for trial of the remaining claim.

The parties have unsuccessfully attempted to resolve their dispute over the disclosure of the electronic information. Although Energy Brands claims to have produced all of its e-mails which reference Kay Beer in the body of the e-mail itself, all emails relating to the 2005 General Release Agreement, which Energy Brands claims terminated the agreement, and the transition to Cadbury

4

as Energy Brands' master distributor, and all emails to and from Kay Beer personnel, Kay Beer contends that this is deficient. Kay Beer contends that it is entitled in addition to all emails which may identify it as "Kay Distributing" or simply "Kay." Moreover, Kay asserts that some of the electronically stored information that postdates the 2005 General Release may refer to Kay Beer as one of Energy Brands' distributors, which would support its claim that it remained an Energy Brands distributor even after the General Release Agreement reduced its territory. Kay Beer seeks production of the DVDs themselves so that it may conduct its own search of them for the relevant information to which it claims it is entitled.

Rule 26(b)(1) makes discoverable any nonprivileged matter that is relevant to a party's claim or that is reasonably calculated to lead to the discovery of relevant evidence. Fed. R. Civ. P. 26(b)(1). Under Rule 34(a), a party may require another party to produce documents or ESI that fall "within the scope of Rule 26(b)." In order to comply with Kay Beer's request for discoverable ESI, Energy Brands conducted a series of searches of its email extender system and copied the results to five DVDs. Energy Brands then conducted its own separate searches of the DVDs in order to retrieve the electronically stored information that was responsive to Kay Beer's requests, and that was nonprivileged and discoverable. Convinced that Energy Brands has not provided all of the emails that are discoverable, Kay Beer has demanded production of the DVDs so that it can conduct its own search. Kay Beer's request is over broad.

In effect, Kay Beer has demanded every email or ESI in which its name or some variation thereof appears. The mere fact that some variation of Kay Beer's name appears on an electronically stored document or in an attachment thereto does not make it discoverable, however. Kay Beer distributed Energy Brand products for more than five years. Over that period of time, Energy

5

Brands accumulated over 38,628 documents amounting to approximately 650,000 to 975,000 pages that contain or reference the words "Kay Beer," "Kay Distributing," or "Kay." (McCauley Decl. ¶¶ 3-7.) A large number of the documents captured in Energy Brands' search of its email extender program are form documents that list "Kay Beer" among an entire list of distributors. By way of example, Energy Brands has produced an eleven-page Divisional Spending Form that lists the specific code for each of the distributors. (Doc. # 41, McCauley Decl. ¶ 9, Ex. B.) This and similar forms, which were presumably electronically transmitted throughout Energy Brands' distribution network over the years, are the kinds of documents which make up the bulk of the information electronically stored on the DVDs. (*Id.*) The facts of this case highlight a serious problem with discovery of ESI, and that is its sheer volume. As another court in this circuit has observed:

> E-mails have replaced other forms of communication besides just paper-based communication. Many informal messages that were previously relayed by telephone or at the water cooler are now sent via e-mail. Additionally, computers have the ability to capture several copies (or drafts) of the same e-mail, thus multiplying the volume of documents. All of these e-mails must be scanned for both relevance and privilege. Also, unlike most paper-based discovery, archived e-mails typically lack a coherent filing system. Moreover, dated archival systems commonly store information on magnetic tapes which have become obsolete. Thus, parties incur additional costs in translating the data from the tapes into useable form.

*Byers v. Illinois State Police*, 2002 WL 1264004, *10 (N.D. Ill. June 3, 2002).

In this case, even Kay Beer concedes that it is highly unlikely that the vast majority of the ESI on the five DVDs Energy Brands has compiled has any bearing on the issues remaining in this case. Yet, Kay Beer insists that it be provided the DVDs so that it can conduct its own search. Energy Brands has no obligation to turn over to an opposing party in a lawsuit non-discoverable and privileged information.

If Energy Brands was ordered to turn over the DVDs, it states that it would need to have its attorneys review all 650,000 to 975,000 pages of documents to insure that only nonprivileged and discoverable information was provided. Since a protective order is in place, Energy Brands would also have to determine what information should be designated "Confidential" or "Attorneys Eyes Only" to prevent its further dissemination. (Doc. # 12.) The cost of conducting such a review in attorney time alone is estimated at almost $120,000.

Kay Beer disputes these figures, arguing that Energy Brands could easily cull any privileged or irrelevant material from its data base by a series of simple searches. For example, Energy Brands could easily remove emails to or from counsel from its data base, as well as emails to or from individuals whose name might be "Kay." But Energy Brands contends it does not even know which outside law firms provided it legal advice as far back as 2002, let alone the names of the individual lawyers who may have been involved. And, of course, emails to or from counsel or individuals with the name of Kay are not the only emails or ESI contained in the DVDs to which Kay Beer is not entitled. Not every email or other electronically stored document that bears some variation of Kay Beer's name is relevant or is reasonably calculated to lead to the discovery of relevant evidence.

In this regard, it is important to take into consideration the nature of the sole claim remaining in the case. The surviving claim is for breach of an oral distribution agreement. There is no dispute that Kay Beer distributed Energy Brands beverages from early 2002 until Energy Brands sold the line of products to Coca Cola in 2007. The sole dispute is whether Energy Brands had promised, as part of its distribution agreement with Kay Beer, that Kay Beer would retain the right to distribute its products as long as it used good faith efforts to do so and its sales increased. While it is conceivable that some of Energy Brands' internal emails may discuss, or at least suggest, some

understanding of the nature of its relationship with Kay Beer, no one suggests that all 38,628 documents stored on the five DVDs Kay Beer has demanded contain such information. Even if an email or other document containing such a discussion or suggestion can be located, it is not at all clear that it would be admissible. Contracts are formed by the parties through an exchange of promises made by their representatives, and what other employees who were not involved in the conversations giving rise to the agreement may believe or assume the relationship to be is likely irrelevant and inadmissible. The mere possibility of locating some needle in the haystack of ESI contained on the five DVDs does not warrant the expense Energy Brands would incur in reviewing it.

Kay Beer also suggests that the need for Energy Brands to incur the cost of having attorneys review the information stored on the DVDs can be avoided through the use of a "claw back" provision of Rule 26(b)(5)(B), which permits a party to demand that privileged information that is inadvertently produced be returned or destroyed. The availability of a remedy for inadvertently produced material, however, does not deprive a party of their right to withhold it in the first place. Moreover, a claw back arrangement does not spare Energy Brands the need to review information that it may wish to withhold on the ground that it is simply not discoverable and contains the kind of proprietary or confidential information that businesses in its position simply prefer not to disclose.

Of course, this is not to say that Energy Brands and its attorneys may simply refuse to respond to properly framed discovery requests for ESI. Energy Brands itself has a duty conduct reasonable searches of the data base it has compiled to respond to Kay Beer's discovery requests. Every response to Kay Beer's discovery requests was required to be signed by one of Energy

8

Brands' attorneys. Fed. R. Civ. P. 26(g)(1). By signing a response to a discovery request, an attorney is certifying that to the best of his or her "knowledge, information, and belief formed a after reasonable inquiry" the response is "complete and correct." *Id.* An attorney who violates this rule and improperly certifies a response to a discovery request is subject to sanctions, both economic and professional. Fed. R. Civ. P. 26(g)(3); Wis. SCR 20:4.1, 20:3.3, and 20:3.4.

Among the 313 requests for production Kay Beer served in this case was REQUEST FOR PRODUCTION NO. 3, which sought "all documents, communications, and things (maintained in hard copy or electronic format) relating to the terms and/or conditions of your business relationship with Plaintiff, including, but not limited to, all agreements, drafts, proposals, or discussions for the entire history of the relationship." (Doc. # 53, Weber Decl., Ex. A at 12.) The defendants agreed to produce all documents responsive to this request. (*Id.* at 13.) In order to meet their obligations under Rule 26(g), counsel for Energy Brands should have performed, or directed that Energy Brands perform, a search of the DVDs containing its electronically stored information using search terms reasonably likely to locate such information if it exists. Energy Brands claims to have provided Kay Beer with all of its emails that reference or discuss "Kay Beer" in the body of the email. But because Kay Beer is also referred to in Energy Brands documents as "Kay Distributing" or simply "Kay," it seems reasonable that emails with these variants of Kay Beer's name in the body of the message would also have been searched by Energy Brands, or should have been. Additional search terms would presumably allow Energy Brands to narrow the number of documents even further if the resulting initial search proved too unwieldy.

Kay Beer asserts in a footnote that Energy Brands has refused its request to produce the appropriate scope of email, but it offers no factual support for this assertion. (Doc. # 97, Kay Beer

9

Reply at 6, n.3.) To be sure, among the 313 requests to produce Kay Beer expounded in this case were at least a dozen directed to Energy Brands in which Kay Beer requested that Energy Brands produce email sent or received by named persons that included various terms. But the terms were stated in the disjunctive, requiring Energy Brands to produce ESI having nothing to do with Kay Beer or the facts of this case. *See* REQUESTS TO PRODUCE NOs. 110 - 122. The fact that Energy Brands did not want to add to the ESI it would have to review is not evidence of recalcitrance. Kay Beer's assertion that Energy Brands refused to conduct a further search is refuted by three separate emails from counsel for Energy Brands offering to work with Kay Beer's counsel in formulating search terms to locate emails that might be relevant. (Doc. # 53-23, Weber Decl., Exs. R., at 4, and V., at 3, 7.) Instead of working with Energy Brands' counsel, Kay Beer seems to have persisted in its demand that Energy Brands turn over all ESI that even mentions its name or some variant thereof.

Kay Beer has also insisted that all documents be produced in native Outlook format, despite the fact the documents could not be Bates stamped in that format, they would be subject to alteration, and it would not be possible to select certain documents and produce only those in that format. (Doc. 53-23, Weber Decl., Ex. V. at 3-4.) While it is true that a party may request production of ESI in a particular form, Fed. R. Civ. P. 34(b)(1)(C), the responding party may object to the form requested, as Energy Brands did here. Fed. R. Civ. P. 34(b)(2)(D). (Doc. # 53-2, Weber Decl., Ex. A at 2.) Energy Brand asserted that Kay Beer's request that documents, information, and or data be produced in their original electronic format was unduly burdensome and noted that the parties had agreed at their Rule 26 conference that either a hard copy or electronic copy would be produced depending on what was most cost-effective. Energy Brands also agreed that if Kay Beer

10

made a good faith request based on demonstrated need for the native form of a document, Energy Brands would endeavor to produce the document in native form. (*Id.*) Energy Brands' offer is consistent with the The Sedona Principles for Electronic Document Production, which state that "[u]nless it is material to resolving the dispute, there is no obligation to preserve and produce metadata absent agreement of the parties or order of the court." The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Discovery (The Sedona Conference Working Group Series, July 2005 Version), available generally at http://www.thesedonaconference.org.[2] Kay Beer's demand that all information be produced in native format, under the circumstances of this case, is excessive.

I conclude that Kay Beer is not entitled to the five DVDs at issue. If it has not already done so, Energy Brands is to conduct the search described above and provide Kay Beer with any additional emails or other ESI that is responsive to REQUEST FOR PRODUCTION NO. 3.

**SO ORDERED** this ___10th___ day of June, 2009.

                                       s/ William C. Griesbach
                                       William C. Griesbach
                                       United States District Judge

---

[2]The Sedona Conference is a nonprofit legal policy research and educational organization which sponsors Working Groups on cutting-edge issues of law. The Working Group on Electronic Document Production is comprised of judges, attorneys, and technologists experienced in electronic discovery and document management matters. *Pace v. International Mill Service, Inc.*, 2007 WL 1385385, *2 (N.D. Ind. May 7, 2007); *Williams v. Sprint/United Management Co.*, 230 F.R.D. 640, 643 (D.Kan.2005)