# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KAY BEER DISTRIBUTING, INC.,

       Plaintiff,

  v.                                 Case No. 07-C-1068

ENERGY BRANDS, INC.,

       Defendant.

## ORDER ON MOTIONS IN LIMINE

      This is an action for breach of contract in which Plaintiff Kay Beer Distributing, Inc., ("Kay") seeks damages from Defendant Energy Brands, Inc., ("Energy") for its termination of an alleged oral exclusive distributorship of Energy's line of vitamin enhanced water drinks. The case is scheduled for trial to commence on October 6, 2009. Presently before the Court are several motions in limine seeking exclusion of certain evidence. In its first motion in limine Energy seeks an order precluding Kay from offering any evidence relating to the details of Coca-Cola's acquisition of Energy, particularly the price paid by Coca-Cola, along with Energy's sales objectives for the sale of the product line at issue in this case. (Doc. # 123.) Energy's second motion in limine requests a ruling which would exclude all evidence or testimony of Kay's General Manger Paul DeGrave concerning his opinion of the value of the product line. (Doc. # 124.)

      Kay seeks to preclude Energy's expert on the value of Kay's lost profits, Marion Glover, from testifying. (Doc. # 125.) Kay contends that as a result of Energy's failure to produce an adequately-prepared witness under Fed. R. Civ. P. 30(b)(6) it has been unable to obtain information

sufficient to understand Glover's testimony and cross-examine him. For the reasons stated below, Energy's motion to exclude evidence of the purchase price Coca-Cola paid to acquire Energy will be granted. All of the remaining motions will be denied.

## Coca-Cola's Acquisition of Energy

Energy's first motion seeks an order excluding evidence of the $4.1 billion purchase price that Coca-Cola paid to acquire Energy. Energy contends that such evidence should be excluded under Fed. R. Evid. 402 because it has no relevance to any of the issues remaining in the case. Alternatively, Energy contends the evidence should be excluded under Fed. R. Evid. 403 because any probative value it may have is substantially outweighed by the danger of unfair prejudice. Kay, on the other hand, argues evidence of the amount Coca-Cola paid to acquire Energy is essential for the jury to understand the magnitude of the loss Kay sustained. Kay also claims it needs to refer to this evidence to effectively cross examine Energy's own valuation experts.

I conclude that evidence of the amount Coca-Cola paid for Energy is not relevant to the question of what damages Kay sustained as a result of the loss of its alleged distributorship. If Kay's evidence is believed, it lost the right to distribute Energy's enhanced water products in northeast Wisconsin. The price paid by Coca-Cola, however, involved the purchase of an entire company with sales across the nation and assumed Energy's products would be distributed using Coca-Cola's well-established distribution network, would be introduced into additional markets with access to additional retailers with significantly increased national and local exposure due to Coca-Cola's marketing and advertising strength. None of the valuation experts, not even Kay's, cited the Coca-Cola transaction as comparable to Kay's loss for valuation purposes. Given these facts, it is difficult to see how the amount Coca-Cola paid has any relevance to the value of Kay's distributorship.

2

sufficient to understand Glover's testimony and cross-examine him. For the reasons stated below, Energy's motion to exclude evidence of the purchase price Coca-Cola paid to acquire Energy will be granted. All of the remaining motions will be denied.

## Coca-Cola's Acquisition of Energy

Energy's first motion seeks an order excluding evidence of the $4.1 billion purchase price that Coca-Cola paid to acquire Energy. Energy contends that such evidence should be excluded under Fed. R. Evid. 402 because it has no relevance to any of the issues remaining in the case. Alternatively, Energy contends the evidence should be excluded under Fed. R. Evid. 403 because any probative value it may have is substantially outweighed by the danger of unfair prejudice. Kay, on the other hand, argues evidence of the amount Coca-Cola paid to acquire Energy is essential for the jury to understand the magnitude of the loss Kay sustained. Kay also claims it needs to refer to this evidence to effectively cross examine Energy's own valuation experts.

I conclude that evidence of the amount Coca-Cola paid for Energy is not relevant to the question of what damages Kay sustained as a result of the loss of its alleged distributorship. If Kay's evidence is believed, it lost the right to distribute Energy's enhanced water products in northeast Wisconsin. The price paid by Coca-Cola, however, involved the purchase of an entire company with sales across the nation and assumed Energy's products would be distributed using Coca-Cola's well-established distribution network, would be introduced into additional markets with access to additional retailers with significantly increased national and local exposure due to Coca-Cola's marketing and advertising strength. None of the valuation experts, not even Kay's, cited the Coca-Cola transaction as comparable to Kay's loss for valuation purposes. Given these facts, it is difficult to see how the amount Coca-Cola paid has any relevance to the value of Kay's distributorship.

Nor has Kay shown why admission of this evidence is necessary for the cross examination of Energy's expert. Energy's expert did not rely on the Coca-Cola transaction. Although he mentioned two transactions that were also quite large, Cadbury and Southeast Atlantic Beverage Company, both involved the termination of distributorships, not the sale of the company itself. Kay fails to explain why it needs to refer to the price paid by Coca-Cola in order to conduct a thorough examination of Energy's expert.

The danger of unfair prejudice, on the other hand, is clear. The sheer size of the transaction, both in terms of what was purchased and the amount paid, so dwarfs the matter at issue here that it would only confuse the jury. It is clear that Kay wants the jury to consider the purchase price paid by Coca-Cola in arriving at the value of its distributorship. But not even its own experts found the transaction comparable. To avoid the risk that the jury would use the sale of the company as a measure, Energy would have to introduce evidence of all of the surrounding circumstances and waste time distinguishing transactions that no one claims are comparable. By offering the purchase price paid by Coca-Cola as a measure or somehow relevant, Kay would be misleading the jury concerning what is actually at issue. For this reason, as well, Energy's motion is granted and Kay is precluded from introducing evidence of the amount Coca-Cola paid to acquire Energy.

**Energy's Sales Objectives**

Energy also claims that any evidence relating to its sales objectives for the Glacéau product line from 2007 forward should be excluded as irrelevant and because it would be confusing or misleading to the jury. As to relevance, Energy notes that Kay's expert, Stephen Bischel, did not rely on such sales projections in his estimate of the fair market value of the product line to Kay. Defendant also points to the fact that Coca-Cola is a very different company than Kay, and that the

3

sales objectives were arrived at with the understanding it would be Coca-Cola and not Kay that did the distributing of the product. This point is the basis of Energy's argument that such evidence poses a risk of creating confusion and misleading the jury into awarding Kay damages not based upon the value of the product to it in 2007, but on the prospective value of the product line in the massive Coca-Cola distribution network. Finally, Energy notes that the data Kay seeks to introduce is for the entire company and not specific to Kay's market.

Kay responds by observing that at least some of the objectives were completed before the Coca-Cola acquisition and Kay's termination, meaning that the projections for this period do not pose the risk to confuse or mislead claimed by Energy. Kay also highlights the importance of projected profitability to the analysis of both Energy's expert witness and its own, Paul DeGrave.

I find that Kay has the better argument. To the extent that some of the projections were made based upon efficiencies only Coca-Cola could realize given the size of its distribution network, Energy is free to draw the factfinder's attention to this point. It is also able to alert the jury to the fact that the projections covered a larger scope than that of Kay's distributorship. With the tools available to Energy on cross examination of Kay's witnesses and in its case, I do not find that this evidence, which is relevant to the question of the value of the distributorship to Kay when it was terminated, poses a significant risk of confusing or misleading the jury. Thus, the motion will be denied.

**DeGrave's Expert Testimony**

Energy also seeks an order which would exclude all evidence or testimony of Kay's General Manger Paul DeGrave concerning his opinion of the value of the product line. Energy argues that DeGrave's opinion should not be admitted under Fed. R. Evid. 702 and that the Court in its gate-

4

keeping function under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Limited v. Carmichael* 526 U.S. 137 (1999), should not permit the jury to hear DeGrave's opinion. According to Energy, DeGrave's opinion is methodologically unreliable and speculative, a house built upon the sandy shores of his own gut feelings and not the rock of solid scientific, economic or comparative data. For example, Energy takes issue with DeGrave's upward adjustment of the numbers used by Kay's other expert, Bischel, based upon DeGrave's sense that sales trends warranted such an adjustment. Energy contends that DeGrave's doubling of the trailing 12-month gross profits from two other transactions involving Kay is particularly troublesome given the fact that he goes on to apply a multiplier of six times the gross profits for this time frame (instead of reducing the multiplier by half).

Kay responds by pointing out that DeGrave has over thirty years of experience in the industry since he began working at Kay in 1977, and has valued several product lines for Kay in the past in the course of negotiations over distribution rights. While DeGrave's opinion may differ from that of Kay's other expert, Bischel, Kay maintains that this does not preclude it from putting DeGrave's opinion before the jury.

While Energy, and apparently even Kay's other expert, may take exception to DeGrave's opinion of the value of the product line to Kay, I do not find that his opinion is so unreliable that I must close the gate and preclude its admission into evidence. DeGrave has substantial experience in the area. He has valued product lines from the perspective of both a buyer and a seller. Upon review of the deposition excerpts submitted by the parties, it appears he differs from Kay's other expert not in the formula for calculating value but in the value of several of the variables used in the formula. Moreover, he has explained, based on his experience, why he disagrees with Kay's other expert.

5

Valuations of this kind are not subject to precise scientific methods. They are judgments made on a number of factors, and DeGrave has the experience and background needed to formulate an opinion based on these factors. Energy will be capable of drawing out the bases of DeGrave's assumptions and whatever deficiencies it can identify in his opinion through the crucible of the cross examination. Energy's motion to exclude DeGrave's testimony will therefore be denied. The parties are forewarned, however, that this ruling, like all rulings in limine, is tentative. The court will give further consideration to the matter as the trial unfolds. As matters now stand, DeGrave's expert opinion will be allowed.

### Glover's Expert Testimony

Kay's motion in limine seeks to keep Energy's expert, Marion Glover, from testifying on a theory that Energy's Rule 30(b)(6) representative was insufficiently prepared for his deposition, effectively preventing Kay from discovering information essential to cross examine Glover on his opinion. Kay sought information regarding (1) the terms under which third parties transferred their rights to distribute the product line to Energy; (2) the terms under which third parties reached settlements concerning their rights to distribute the product line due to involuntary terminations by Energy; and (3) how Energy's intangible assets were valued by Energy for the Coca-Cola transaction. Kay appears most dissatisfied in its claims that Energy failed to provide a Rule 30(b)(6) witness prepared to testify regarding negotiated settlements Energy had made with third parties and that the witness was not prepared to discuss how Energy valued its intangible assets before the Coca-Cola acquisition.

In response to Kay's request, Energy produced John Kealy, Energy's Vice President of Accounting and Finance. Kealy had with him at the deposition a binder containing over 60

6

settlement agreements with terminated distributors that Energy's General Counsel's office had located. Energy candidly admits that the binder did not contain every single transaction that fell into the category of transactions of interest to Kay, but that copies of other agreements were provided to Kay's counsel after the deposition.

Implicit in Kay's motion is an unacceptably high expectation of how much homework a corporate representative must undertake under Rule 30(b)(6). Here, Kay appears to fault Kealy for not speaking with various current and former Energy executives about the specifics of agreements with previous distributors or the negotiations leading up to the Coca-Cola transaction, or for failing to uncover every piece of paper relating to these transactions. Kay misinterprets the scope of the duties placed on corporate representatives under Rule 30(b)(6). The person designated does not become a private investigator of the party noticing the deposition–he is only required to provide testimony "about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).

The Court has reviewed the excerpts of Kealy's deposition provided by the parties and concludes that Kealy was sufficiently prepared to provide the testimony called for under Rule 30(b)(6). Kay takes issue with the fact that although Kealy brought a binder full of detailed information on transactions between Energy and other distributors, he lacked information regarding negotiated settlements (as opposed to settlements based upon a liquidated damages clause). On August 10, 2009, Energy provided Kay a digest summarizing the payments it had made to terminated distributors. This digest included details of nine different negotiated terminations, and was available to Kay during Kealy's deposition, along with the binder of settlement agreements. Kay recognizes that Energy provided the additional agreements after Kealy's deposition, but maintains that the details of the settlement transactions remain incomplete. Even though Kay

7

portrays Energy's behavior as meriting the sanction of preventing Glover from testifying, a sanction that the Seventh Circuit has noted the district courts may employ, *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 670-71 (7th Cir. 1996), I do not find that such a sanction is warranted in this case.

On the question of how it valued its intangibles prior to the Coca-Cola transaction, Kealy testified that he "was the key financial guy" and that he was the "key financial lead" in the negotiations. (Kealy Depo. 12:8, 14:1-2.) Kealy also testified that as the key financial lead on the deal, he would have had knowledge of any calculation Energy may have made of its intangible assets prior to the Coca-Cola transaction. (*Id*. 65:4-15.) Kay's quibbling over the fact that Kealy did not interview current and former employees who were involved in the negotiations over whether they had made any estimates of the value of Energy's intangibles is unconvincing given Kealy's testimony that he was took the lead on financial issues and was unaware that any such estimate had been made. Kay's motion to exclude Glover's testimony will be denied.

**SO ORDERED** this   29th   day of September, 2009.

                                            s/ William C. Griesbach
                                            WILLIAM C. GRIESBACH
                                            United States District Judge